# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL CASEY, individually on behalf of himself and all others similarly situated, | x : : : : |
| Plaintiff, | : Case No. : |
| v. | : **CLASS ACTION COMPLAINT** : **FOR:** |
| BMW OF NORTH AMERICA, LLC, a Delaware limited liability company, | : : (1) Breach of Express Warranty; : (2) Breach of Implied Warranty; : (3) Violation of N.J.S.A. § 56:8-1, : *et seq.*; |
| Defendant. | : (4) Magnuson-Moss Warranty : Act; and : (5) Unjust Enrichment. : : : : : |
| | x |

Plaintiff Daniel Casey brings this case against Defendant BMW of North America (hereinafter, "BMW" or "Defendant") by and through his attorneys, individually and on behalf of all others similarly situated and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

## NATURE OF THE ACTION

1.     Plaintiff represents a class of BMW motorcycle owners. The motorcycles were sold with defective gear indicators which intermittently displayed the wrong gear or did not indicate any gear at all.

1

2.      In doing so, the defective gear indicators can cause multiple problems for motorcycle drivers and can lead to accidents and other safety issues.

3.      The defective gear indicators are found on Model year 2003-2019 F, K, G, R, HP2, and S series BMW motorcycles (the "Motorcycles.").[1]

4.      The Motorcycles' gear indicators have been the subject of numerous consumer complaints.

5.      BMW has long known about the problem but has not notified consumers.

6.      Plaintiff brings this action on behalf of a proposed nationwide class, as defined herein, of purchasers and lessees of one or more of the Motorcycles in the United States. Plaintiff seeks a judgment requiring BMW to, among other things, inform all class members of the gear indicator defect in the Motorcycles, to recall and remedy the gear indicator defect, and to make appropriate restitution to class members.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C.§1332(d)(2), because the Plaintiff and the Defendant are citizens of different states, there are more than 100 members of the class and the aggregate amount in controversy exceeds $5,000,000, exclusive of attorneys' fees, interest, and costs.

8.      This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District, and Defendant has sufficient contacts in this jurisdiction, including marketing, distribution, and sale of the Motorcycles. Moreover, Defendant's wrongful conduct (as described herein) foreseeably affects consumers in New Jersey.

---

[1] A list of affected Motorcycles is attached to this Complaint as Exhibit A.

9.     Pursuant to 28 U.S.C. §1391(b), venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendant maintains its principal place of business in Woodcliff Lake, New Jersey.

## PARTIES

### Plaintiff

10.     Plaintiff is a citizen of Washington State.  In February of 2016 he purchased a new 2016 F700GS BMW motorcycle from South Sound Motorcycles in Tacoma, Washington. Plaintiff did so in reliance on representations by BMW that he was receiving a safe and usable product. Plaintiff reviewed Defendant's promotional materials and other information prior to his purchase.  The materials and information did not disclose that the Motorcycles suffer from defective gear indicators. Had Defendant disclosed the defective gear indicators, Plaintiff would not have purchased his motorcycle or purchased the motorcycle on those same terms.

11.     In May of 2017 the Plaintiff's motorcycle began experiencing major issues with the gear indicator.  Specifically, the gear indicator would intermittently display the wrong gear or fail to indicate what gear the motorcycle is in at all.  Such gear indicator malfunctions are unpredictable and may persist for a short time or most of a ride.  Turning off and restarting the motorcycle will sometimes result in the gear indicator becoming operable again, but other times it continues to malfunction.  Plaintiff took his motorcycle to BMW for repair on four separate occasions.  On each occasion, repairs were attempted including having the potentiometer diagnosed as the problem and replaced.  During one visit the motorcycle was in for repairs for approximately seven weeks to remediate the issue.  Nevertheless, the issues with Plaintiff's gear indicator persisted after each service.

3

**Defendant**

12.    Defendant is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Woodcliff Lake, New Jersey.

13.    Defendant provides an express warranty against any "defects in materials or workmanship" in the Motorcycles to the first retail purchaser and each subsequent purchaser for 3 years or 36,000 miles, whichever occurs first.

14.    At all relevant times, Defendant took part in designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing the Motorcycles in the United States, including the States of New Jersey and Washington.

## SUBSTANTIVE ALLEGATIONS

15.    Defendant designs, develops, manufactures, markets, advertises, distributes, sells, and leases a wide range of automotive products including motorcycles.   Defendant deals in motorcycles and holds itself out as having knowledge and skill in the design and manufacture of motorcycles.

16.    Safe and functional gear indicators were material to Plaintiff and Class members' decisions to buy or lease the Motorcycles. A reasonable consumer expects and assumes that when he or she buys a motorcycle, it includes a safe and functional gear indicator. A reasonable consumer further expects and assumes that Defendant will not sell vehicles with known safety defects, and will disclose any such defect to their customers.

17.    This lawsuit concerns the Motorcycles indicated on Exhibit A hereto.

**The Gear Indicator System is Defective**

18.     The gear indicator system, which includes the potentiometer and its terminals, the software that interprets the readings of the potentiometer, and the multifunction display, is defective.

19.     A potentiometer is a component of the Motorcycles that is connected to the transmission.  It determines what gear the Motorcycle is in by measuring electrical potential and communicates that to the driver via the multifunction display.  Below is a photograph of the multifunction display for the BMW F700GS motorcycle, indicating that the Motorcycle is in neutral.



20.     A potentiometer is a variable resistor with three terminals. Two terminals are connected to a resistive element.  The third terminal is connected to an adjustable wiper. The

5

position of the wiper determines the output voltage. Based on the output voltage, the potentiometer communicates the readings to the onboard computer, then the onboard computer calculates the appropriate gear and then causes the gear to be indicated on the multifunction display of the Motorcycles. Below is a photograph of the potentiometer for the Motorcycles.



21.     The Motorcycles' multifunction display manifests this defect by frequently displaying the wrong gear (such as indicating that the motorcycle is in neutral when it is in drive, and vice versa), or failing to display any gear whatsoever.

22.     Displaying the incorrect gear (or not displaying the gear at all) causes a number of issues in starting and operating the Motorcycles, including, but not limited to:

- Inability to properly judge accelerating power;

- Placing the Motorcycle in the incorrect gear when in cruise control;

- Reduced gas mileage from being in incorrect gear;

- Improper judgement of power and torque delivery available;

- Causing excessive strain on the motor due to incorrect gear to speed ratio which can lead to eventual catastrophic engine failure;

- Difficulty starting the Motorcycle as a result of an inability to put the motorcycle in neutral; and

- Potential for damage to the motorcycle and the user from the Motorcycle inadvertently starting in gear and accelerating forward when the gear indicator incorrectly indicates the Motorcycle is in neutral.

**Consumer Complaints About the Gear Indicator/Potentiometer**

23.    Consumers have lodged numerous complaints via the BMW online forums regarding the defective performance of the Motorcycle gear indicators.

24.    In many instances of defective gear indicators, the Motorcycle owners or lessees also reported the incidents to their dealers or BMW directly.

25.    A representative sampling of complaints from BMW forums detail the gear indicator performance problems and difficulties they cause in starting and operating the Motorcycles:

26.     In February of 2012, an owner of a 2007 R1200R model BMW motorcycle complained that he could not start his motorcycle because the neutral indictor was not showing on his multifunction display:

> Need advice.......when I turn on the ignition the neutral indicator does not show on the instrument screen as it normally does, and the bike won't start.  I fiddle with

the side stand with no results. As I try to shift up to 2nd and back down to 1st I get quick flickers of the N and the 2 (not the 1) but they disappear very quickly.[2]

27.    Just a month later, a consumer from Colorado Springs, Colorado similarly wrote that he was unable to start his H2 model Motorcycle because the multifunction display would not display the neutral gear.[3]

28.    On March 9, 2016, an owner of a BMW 2005 K1200S from Hiawassee, Georgia complained that his Motorcycle inadvertently accelerated forward and crashed sustaining injuries because the potentiometer read the wrong gear:

> This morning, I mount the bike, turn on the switch and wait for the dash to boot up. Then the dash showed a green N. so I hit the starter button, with the bike still on the side stand. To my surprise, the bike jumps forward and down. I say some words. I get the bike back up and look it over, just a few scratches. I find neutral, dash shows 2nd gear, so pull the clutch lever and start it up. The dash is flashing all sorts of warnings, but it's running so I ride on to work, no problems,,, till I get to work. I pull into my parking spot and I notice the headlight shinning on the wall. It looked like one of the bulbs was out, so I leave it running, get off and start to walk around to look at the bulbs,,, the engine dies. I say some more words. Now it wont start,,, more words,,,cycle the key a few times, nothing,,,try it with kickstand up, starts up. Dash shows a blank gear indicator.
>
> I just went out and tried it again. This time I wiggled the shifter and was able to get the neutral light to come on and start the bike. I guess now all I need to do is clear the codes. and replace the headlight bulb.,,, and never trust the dash again!!![4]

**BMW Fails to Notify the Government and Consumers**

29.    As demonstrated by the complaints regarding the gear indicators, BMW and its dealerships were fully aware of the defective nature of the gear indicators.

---

[2] https://www.r1200rforum.com/forum/bmw-r1200r-tech-performance-chat-8/lost-neutral-gear-indicator-no-start-4873/
[3] https://advrider.com/f/threads/2004-r1200gs-neutral-light.1184600/
[4] https://www.bmwlt.com/forums/k1200-1300gt-next-generation/146945-dash-showed-neutral-but-cranked-gear.html

30.     Under federal law, 49 USC 30118 (c)(1)-(2), a manufacturer must notify the Secretary of Transportation (or NHTSA) and owners, purchasers and dealers if the manufacturer learns the vehicle contains a defect and if the manufacturer decides in good faith that the defect is related to motor vehicle safety or decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under the 49 USC 101 e*t seq*.

31.     The safety concerns caused by the defective gear indicator described herein warrant such notification to the government and consumers.  No such notification has been provided.

## CLASS ACTION ALLEGATIONS

32.     31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of himself and all others similarly situated as members of the proposed class (the "Class"), defined as: "All current or former purchasers and lessees of one or more of the Motorcycles who purchased or leased their Motorcycles in the United States (other than for purposes of resale or distribution)."

33.     **Numerosity.** The members of the Class are so numerous that their individual joinder is impracticable. The proposed Class likely contains thousands of members. The true number of Class members can be ascertained through information and records in Defendant's possession, custody or control.

34.     **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class, and these issues predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) Whether the Motorcycles' gear indicators are suitable for their intended purpose and merchantable;

(b) Whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed defectively designed and/or manufactured Motorcycles into the stream of commerce in the United States;

(c) Whether Defendant misled Class members about the safety and quality of the Motorcycles;

(d) Whether Defendant actively concealed the defects contained in the Motorcycles;

(e) Whether the defects would be considered material by a reasonable consumer;

(f) Whether Defendant had a duty to disclose the defects to Class members;

(g) Whether Defendant's misrepresentations and omissions regarding the safety and quality of the Motorcycles were likely to deceive Class members in violation of the NJCPA;

(h) Whether Defendant failed to timely recall the Motorcycles;

(i) Whether Defendant breached its express warranty to consumers;

(j) Whether Defendant failed to adequately repair the Motorcycles;

(k) Whether Defendant breached the implied warranty of merchantability with respect to the Motorcycles;

(l) Whether Class members overpaid for their Motorcycles as a result of the defects alleged herein;

(m) Whether the defects have diminished the value of the Motorcycles; and

(n) Whether Class members are entitled to equitable relief, including but not limited to restitution or a preliminary and/or permanent injunction.

35.    **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff purchased a Motorcycle that suffers from the same gear indicator defect as the members of the Class.

36.    **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

37.    **Rule 23(b)(3).** Questions of law and fact common to class members predominate over any questions affecting only individual members, and a class action is a superior method for adjudicating this controversy. The monetary damages or other pecuniary loss suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. As such, individual consumers do not have a strong interest in controlling the prosecution to separate actions. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issued raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here. Plaintiff knows of no other litigation addressing this issue on a class wide basis.

38.    **Rule 23(b)(1) and (b)(2).** In the alternative, the Class may also be certified because: (a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant; (b) Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole; and/or Certification of specific issues such as Defendant's liability is appropriate.

39.    The claims asserted herein are applicable to all consumers throughout the United States who purchased the Motorcycles.

40.    Adequate notice can be given to Class members directly using information maintained in Defendant's records or through notice by publication.

41.    Damages may be calculated from the claims data maintained in Defendant's records, so that the cost of administering a recovery for the Class can be minimized. However, the precise amount of damages available to Plaintiff and the other members of the Class is not a barrier to class certification.

**FIRST CAUSE OF ACTION**
**Breach of Express Warranty**
**(Brought on Behalf of Plaintiff and All Class Members)**

42.    Plaintiff realleges and incorporates by reference each preceding paragraph as though set forth at length herein.

43.    Defendant expressly warranted to Plaintiff and Class members that the Motorcycles were "free from defects in materials or workmanship" in the Motorcycles and that they would repair, replace, or adjust defective parts on the Motorcycles up to 3 years or 36,000 miles, whichever occurs first.

44. Defendant's express warranty of repair, replacement, or adjustment extended to the Class Members who did not purchase Motorcycles from one of Defendant's dealerships because they are natural persons who could have been expected to use or be affected by the Motorcycles, as it was foreseeable that the Motorcycles could be resold to persons other than their original purchasers.

45. As alleged above, Defendant had knowledge and has been on notice of the gear indicator defect in the Motorcycles at all relevant times.

46. Defendant breached its express warranty of repair, replacement, or adjustment because it either refused or has been unable to successfully repair or otherwise remedy the gear indicator defect in the Motorcycles.

47. Defendant has either refused to cover parts and labor costs related to the gear indicator defect in the Motorcycles, or Defendant has replaced parts of the gear indicator with equally defective parts in the Motorcycles and thus not remedied the defect.

48. Defendant's express warranty of repair, replacement, or adjustment has failed of its essential purpose because, although Defendant has had a reasonable chance to repair or otherwise remedy the common defect described above, the Motorcycles still contain defective gear indicators.

49. Defendant also breached its express warranty of repair, replacement, or adjustment because Plaintiff and Class members have been deprived of the value of the bargain with respect to the Motorcycles and did not receive the Motorcycles for which they bargained. Plaintiff and Class members did not expect, nor would it have been reasonable for them to expect, that their Motorcycles contain a defect that causes the vehicle to intermittently display the wrong gear, or no gear at all.

50.    As a direct and proximate result of Defendant's breach of the express warranties for the Motorcycles, Plaintiff and Class members have paid extra for the Motorcycles, have incurred and/or will incur substantial parts and labor costs related to attempts to repair the gear indicator defect, and have incurred diminution in value damages.

51.    Plaintiff and Class members have reasonably relied on Defendant's warranties regarding the quality, durability, and other material characteristics of the Motorcycles, and on Defendant's ability to repair, replace, or adjust defective items on the Motorcycles.

52.    Because Defendant intentionally concealed and omitted material information about the gear indicator defect in the Motorcycles, it should be presumed that Plaintiff and Class members relied on Defendant's warranties and on Defendant's ability to repair, replace, or adjust defective items on the Motorcycles, and that Defendant's breach of the express warranties for the Motorcycles caused the damages sustained by Plaintiff and Class members.

53.    Plaintiff notified Defendant of the above-described breach of its express warranty within a reasonable amount of time after Plaintiff and the members of the Class discovered or should have discovered such breach by taking their Motorcycles to Defendant's dealerships to have repairs performed on the defective gear indicators in those Motorcycles.

54.    Any time, mileage, or damage limitation or restriction that would act to bar the claim for breach of express warranty claim asserted herein, or to limit the damages recoverable under that claim, is unconscionable and unenforceable.

55.    Plaintiff and Class members demand judgment against Defendant for compensatory damages in an amount to be determined at trial, together with reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty**
**(Brought on Behalf of Plaintiff and All Class Members)**

56.     Plaintiff realleges and incorporates by reference each preceding paragraph as though set forth at length herein.

57.     Plaintiff and Class Members purchased the Motorcycles from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Motorcycles when bought from a third party.

58.     At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of Motorcycles. Defendant knew or had reason to know of the specific use for which the Motorcycles were purchased.

59.     At the time of purchase, Defendant provided an implied warranty to Plaintiff and Class Members that the Motorcycles and their components including, but not limited to, the gear indicator, were merchantable and fit for the ordinary purposes for which they were sold.

60.     Defendant breached its implied warranty in that, at the time of purchase, the Motorcycles were defective, unsafe, and not fit for the ordinary purpose of providing reasonably reliable and safe transportation for a reasonably expected length of time. Under normal circumstances, a properly designed and manufactured gear indicator should last for the life of the Motorcycles without the need for repair or replacement. Defendant cannot disclaim this implied warranty as they knowingly sold a defective product.

61.     Defendant knew or should have known the gear indicator defect existed in the Motorcycles at the time of manufacture.  Plaintiff and Class Members, on the other hand, had no notice of or ability to detect the gear indicator defect prior to purchasing the Motorcycles. For this reason, any limitation on the duration of the implied warranty unreasonably favored

Defendant over Plaintiff and Class Members, and Plaintiff's and Class Members' acceptance of the anytime limitation was neither knowing nor voluntary, thereby rendering such limitation unconscionable and ineffective.

62.     Defendant sold to Plaintiff and Class Members the defective Motorcycles without alerting them to the gear indicator defect.

63.     After sale, Defendant failed to notify Plaintiff and the Class Members of the gear indicator defect.

64.     Defendant knew or should have known that a reasonable consumer exercising due diligence, including Plaintiff and Class Members, could not have discovered the gear indicator defect unless and until the defect manifested itself.

65.     Defendant failed to remedy the gear indicator defect and repair damage caused by the gear indicator defect without charge to the consumer.

66.     Plaintiff and Class Members are third-party beneficiaries to a contract that gives rise to the implied warranty of merchantability, to the extent Defendant challenges such warranty based on a lack of privity. Defendant's implied warranty of merchantability extended to the Class Members who did not purchase Motorcycles from one of Defendant's dealerships because they are natural persons who could have been expected to use or be affected by the Motorcycles, as it was foreseeable that the Motorcycles could be resold to persons other than their original purchasers.

67.     As a direct and proximate result of Defendant's actions, Plaintiff and Class Members have suffered economic damages including, but not limited to, repair costs, loss of use of the Motorcycles, substantial losses in value and resale value of the Motorcycles, and other damages.

**THIRD CAUSE OF ACTION**
**Violation of N.J.S.A. 56:8-1, et seq.**
**(Brought on Behalf of Plaintiff and All Class Members)**

68.     Plaintiff realleges and incorporates by reference each preceding paragraph as though set forth at length herein.

69.     The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("NJCFA"), prohibits, in relevant part, "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise. . .". N.J.S.A. 56:8-2.

70.     Plaintiff and Class Members are consumers who purchased and/or leased Motorcycles for personal, family, or household use.

71.     Plaintiff sent a letter providing appropriate pre-suit notice to BMW more than thirty days before the filing of this action, but BMW did not respond.

72.     Prior to Plaintiff's and Class Members' purchase of the Motorcycles, Defendant violated the NJCFA in the following respects:

a. Defendant affirmatively represented that the Motorcycles are safe and reliable despite knowledge of the gear indicator defect; and

b. Defendant affirmatively represented that the Motorcycles were "free from defects in materials or workmanship" workmanship despite knowledge of the gear indicator defect.

73.     Plaintiff and Class Members reasonably expected that the Motorcycles would not be defectively designed such that the gear indicator would fail during normal use. Further,

Plaintiff and Class Members reasonably expected Defendant to honor its warranty obligations as represented to them at the time they purchased their Motorcycles.

74.    Defendant knew, or, in the exercise of diligence, should have known, the Motorcycles were defectively designed or manufactured, posed a safety risk, and were not suitable for their intended and/or expected use.

75.    In failing to disclose the gear indicator defect, the safety risk it posed, and the associated (potential) repair options and attendant costs which Defendant would not cover under warranty, Defendant omitted material facts it was under a duty to disclose to Plaintiff and Class Members.

76.    The injury to consumers by this conduct greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

77.    Had Plaintiff and Class Members known about the gear indicator defect at the time of purchase, including the safety hazard posed by the defect and the monetary cost of repair, or the true effect of Defendant's warranty of the Motorcycles, they would not have bought the Motorcycles or would have paid much less for them.

78.    Had Plaintiff and Class Members known about the gear indicator defect, they would not have paid to repair the potentiometer and the damage caused by the defect and would have instead insisted it be fixed under warranty and without cost.

79.    As a direct and proximate result of Defendant's actions, Plaintiff and Class Members have suffered ascertainable loss and other damages.

**FOURTH CAUSE OF ACTION**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.**
**(Brought on Behalf of Plaintiff and All Class Members)**

80.    Plaintiff realleges and incorporates by reference each preceding paragraph as though set forth at length herein.

81.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

82.    Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

83.    The Motorcycles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

84.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.

85.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

86.    Defendant's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

87.    The Motorcycles' implied warranties are covered under 15 U.S.C. § 2301(7).

88.    Defendant breached these warranties as described above, because the Motorcycles share a common defect in that they are equipped with a defective gear indicator that intermittently indicates the wrong gear (or no gear), which can cause damage to the motor, an inability to start the Motorcycles, and dangerous unexpected acceleration, among other issues.

89.    Plaintiff and Class members have had sufficient direct dealings with either Defendant or its agents (including its dealerships) to establish privity of contract between

19

Defendant, on the one hand, and Plaintiff and each Class member, on the other hand.

Nonetheless, privity is not required because Plaintiff and Class members are intended third party

beneficiaries of contracts between Defendant and its dealers and specifically of Defendant's

implied warranties. Plaintiff and Class members are intended to be the ultimate consumers of the

Motorcycles and have rights under the warranty agreements provided with the Motorcycles,

which are designed for and intended to benefit the consumer.

90.    Defendant's breach has directly and proximately caused Plaintiff and Class

members to suffer damages, including diminution in the value of their Motorcycles, in an amount

to be proven at trial.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(Brought on Behalf of Plaintiff and All Class Members)**

91.    Plaintiff realleges and incorporates by reference each preceding paragraph as

though set forth at length herein.

92.    Plaintiff and the Class members conferred benefits on Defendant when they

purchased or leased Motorcycles with defective gear shift indicators.

93.    Plaintiff and the Class also conferred benefits on Defendant when they incurred

parts and labor costs attempting repair the gear indicator defect.

94.    Under the circumstances, it would be against equity and good conscience to

permit Defendant to retain the entirety of the benefits conferred on it when Plaintiff and the Class

purchased or leased Motorcycles.  This is because Defendant knew about the gear indicator

defect in the Motorcycles but intentionally concealed that material information from Plaintiff and

the Class, and failed to disclose it to them in order to induce them to purchase the Motorcycles.

Plaintiff and the Class members would not have purchased the Motorcycles if they had known of the gear indicator defect.

95.    It would therefore be unjust and inequitable for Defendant to retain all of the benefits they received and not provide restitution to Plaintiff and the Class.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b)    Enjoining Defendant from continuing the unfair business practices alleged in this complaint and requiring Defendant to institute a recall or otherwise repair the Motorcycles;

(c)    Awarding monetary damages, including treble damages;

(d)    Awarding punitive damages;

(e)    Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f)    Granting such other and further relief as the Court may deem just and proper.

Dated:  July 5, 2019

**THE SULTZER LAW GROUP P.C.**

Janine Pollack /s/

By: _____

Janine Pollack, Esq.
351 West 54th Street, Unit 1C
New York, NY 10019
Tel: (212) 969-7810
Tel: (888) 749-7747
pollackj@thesultzerlawgroup.com

Adam Gonnelli, Esq.
280 Highway 35, Suite 304
Red Bank, NJ 07701
Tel: (845) 483-7100
Fax: (888) 749-7747
gonnellia@thesultzerlawgroup.com

**WALSH PLLC**

Bonner Walsh /s/

By: _____

Bonner Walsh, Esq.
1651 Long Haul Road
Grangeville, ID 83530
Tel: (541) 359-2827
Fax: (866) 503-8206
bonner@walshpllc.com

*Counsel for Plaintiff and the Class*